IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Kena Properties, L.L.C., *et al.*,   )
                                       )   Case No. 1:04-CV-672
                      Plaintiffs,  )
                                         )
          vs.                          )
                                       )
Merchants Bank & Trust,         )
                                       )
                    Defendant.  )

Memorandum and Order

       In the Summer of 2003, Plaintiffs Kena Properties, L.L.C., Leslie Foster, and James Foster sought financing in various forms and for various purposes from Defendant.  In July 2003, Defendant issued two commitment letters for refinancing of properties owned by Kena Properties and Leslie Foster and for an unsecured line of $250,000 credit to Kena Properties.  In August, Defendant's Vice President Diana Barhorst verbally indicated that Defendant would also provide financing for a condominium development Leslie Foster wanted to undertake in Mt. Adams (the "Alpine Terrace Project").  Eventually, Defendant declined to provide any financing in any form to Plaintiffs.  This action ensued.  Plaintiffs assert claims for breach of contract and promissory estoppel.  This matter is before the Court upon Defendant's motion for summary judgment with respect to both claims (Doc. 18).

    A.  Background

Both commitment letters issued by Defendant in July 2003 included the following language: "This commitment may be deemed null and void if there are any material adverse conditions with respect to the borrower that occur before closing." In September 2003, while performing due diligence with respect to the two loans associated with the July 2003 commitment letters, Defendant learned that Kena Properties had recently been named a defendant in a real estate "flipping" lawsuit in this district. Defendant's president contacted Leslie Foster, Kena Properties' president, to discuss the lawsuit. After initially indicating that she would meet, Mrs. Foster declined to do so and contacted her attorney, who then engaged in discussions with counsel for Defendant. A short time later, Defendant declined to provide the financing discussed in the July 2003 commitment letters on the basis of the lawsuit, which it considered to be a material adverse condition with respect to Kena Properties.

While Diana Barhorst may have verbally stated that Defendant would provide financing in the amount of $7.5 million for the Alpine Terrace Project, the parties agree that she stated in the same telephone conversation that she would send documents requesting information and that Defendant would require information about the property to be used as collateral for the loan. The parties further agree that Ms. Barhorst never sent such documents and that Defendant did not issue a commitment letter with respect to the Alpine Terrace Project. It also declined to provide any financing for that project.

2

Plaintiffs allege that Defendant breached the contracts represented by the two July 2003 commitment letters and by Ms. Barhorst's oral statement that Defendant would provide financing for the Alpine View Project.  They further allege that promissory estoppel prevented Defendant from declining to provide the financing promised in the two letters and the oral statement.

Defendant seeks summary judgment with respect to Plaintiffs' breach of contract claim on two grounds.  It argues, with respect to the two commitment letters, that the "material adverse condition" provision of the agreements represented by the commitment letters was satisfied by the lawsuit naming Kena Properties as a defendant, thereby permitting Defendant to consider the agreements null and void.  Plaintiffs deny that the lawsuit constituted a material adverse condition.  With respect to the Alpine Terrace Project and Diana Barhorst's oral statement that Defendant would provide financing, Defendant argues that the statement did not constitute a contract.

Defendant also seeks summary judgment with respect to the promissory estoppel claim.  It contends that Plaintiffs could not have justifiably relied upon Ms. Barhorst's statement in light of their acknowledgment that she also stated that written documentation would follow and that such documentation did not follow.  Plaintiffs respond that they acted in reliance on the statement to their detriment.

B.  <u>The Summary Judgment Standard</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962).  "The mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)(emphasis in original).

The Court will not grant summary judgment unless it is clear that a trial is unnecessary.  The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Anderson</u>, 477 U.S. at 250.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  <u>Id.</u>

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment.  <u>Poller v. Columbia Broadcasting System, Inc.</u>, 368 U.S. 464, 472 (1962).  "[T]he issue of material fact required by Rule 56(c) . . . to

entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.  Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for

5

discovery and upon motion" against a party who fails to make that showing with significantly probative evidence.  Id.; Anderson, 477 U.S. at 250.  Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim.  Id.  Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits."  Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

C.  Analysis

1.  Breach of Contract

The parties' entire dispute as regards the two July 2003 letters of commitment surrounds the interpretation of the agreements' "material adverse condition" provision.  According to the undisputed language in the contract, a material adverse condition would permit Defendant to consider the agreements embodied in the letters of commitment null and void.  The parties agree that the phrase is not defined in the agreements themselves, and no party has introduced evidence of the parties'

6

understanding at the time the agreements were entered. Defendant argues, nevertheless, that it properly nullified the agreements because the real estate flipping lawsuit in which Kena Properties was named as a defendant satisfied the "material adverse condition" provision.

The interpretation of written contracts, including any assessment as to whether a contract is ambiguous, is a question of law subject to *de novo* review on appeal. See Long Beach Ass'n, Inc. v. Jones, 82 Ohio St.3d 574, 576 (1998). If a contract is unambiguous, its interpretation is a matter of law unaccompanied by the need for factual determinations. See Alexander v. Buckeye Pipeline Co., 53 Ohio St.2d 241, 246 (1978). Contract terms are ambiguous only if they are susceptible to more than one reasonable interpretation. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander, 53 Ohio St.2d 241 at Syllabus, ¶2.

The phrase "material adverse condition" is unambiguous. It means a meaningful or significant, negative or disadvantageous situation. In the context in which the phrase is used in the agreements in question, it means a significant disadvantageous situation arising in the life or existence of a borrower under the agreement. The parties may squabble over the degree of significance of the real estate flipping lawsuit, but Plaintiffs cannot seriously argue that the lawsuit was immaterial, given the virtual certainty that it would affect the financial position of Kena Properties, if only as a result

7

of the expenditure of legal fees. The parties may also squabble over the degree of adverseness of the lawsuit, but Plaintiffs cannot seriously deny that its filing was an adverse condition. The Court can conceive of no interpretation of the phrase "material adverse condition" that would not encompass the filing of the lawsuit naming Kena Properties as a defendant after the agreements in question were executed. Because the agreements include the word "any" before "material adverse condition," Defendant was permitted to nullify the agreements whenever a material adverse condition of any sort arose. Its doing so did not amount to a breach of the agreements embodied in the commitment letters. Defendant is, therefore, entitled to summary judgment with respect to Plaintiffs' breach of contract claim to the extent that it is based upon the two commitment letters.

Plaintiffs' breach of contract claim based upon Defendant's failure to provide financing for the Alpine Terrace Project is equally unavailing. Plaintiffs concede that the alleged agreement on Defendant's part to provide such financing was not reduced to writing. Ohio's statute of frauds, Ohio Revised Code ("O.R.C.") § 1335.02(B), provides that a party may not bring an action on a loan agreement "unless the agreement is in writing." Plaintiffs attempt to circumvent the statute of frauds by arguing that the statute is inapplicable because the parties did not enter into a written loan agreement. The fact highlighted by Plaintiffs is, of course, the precise reason for the application of the statute of frauds: no loan agreement exists because the alleged promise to provide secured financing, i.e., a loan, was not reduced to writing. Plaintiffs may not, in

accordance with O.R.C. § 1335.02(B), enforce the alleged promise.  Accordingly, Defendant is entitled to summary judgment with respect to Plaintiffs' breach of contract claim.

2.  Promissory Estoppel

To the extent that Plaintiffs intended to base their promissory estoppel claim, in part, on the two 2003 commitment letters, which, the parties apparently agree, constituted contracts to provide financing, their claim is precluded by the existence of a written agreement.  See General Aviation, Inc. v. Cessna Aircraft Co., 915 F.2d 1038, 1042 (6th Cir. 1990)("'[p]romissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract[]'")(quoting Walker v. KFC Corp., 728 F.2d 1215, 1220 (9th Cir. 1984)).

Because no written loan agreement exists with respect to the Alpine Terrace Project, Plaintiffs assert a promissory estoppel claim on the basis of Diana Barhorst's alleged statement that Defendant would provide $7.5 million in financing for the Alpine Terrace Project.  The Court is not persuaded that such a promise may be enforced in light of the applicability of the statute of frauds cited above, which precludes suits on loan agreements that are not reduced to writing.  In any event, Plaintiffs have not demonstrated that they can prove the necessary elements of promissory estoppel with respect to the oral statement of Ms. Barhorst.

The doctrine of promissory estoppel holds that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."  Restatement of the Law 2d, Contracts (1981), Section 90.  See also Ed Schory & Sons, Inc. v. Francis, 75 Ohio St.3d 433, 439 (1996).  Application of the doctrine of promissory estoppel requires (1) a clear and unambiguous promise; (2) reliance upon the promise by the promisee; (3) reasonable and foreseeable reliance; and (4) injury to the person claiming reliance as a result of the reliance.  See Weiper v. W.A. Hill & Associates, 104 Ohio App.3d 250, 260 (1994).

The parties agree that Defendant did not provide funding for the Alpine Terrace Project.  Plaintiff Leslie Foster represents that Diana Barhorst told her that Defendant would provide financing for the Alpine Terrace Project in a telephone conversation during which she also told Ms. Foster that Defendant would need documentation concerning the property to be used as collateral and that a written commitment would follow.  Plaintiffs have offered some evidence of detrimental reliance upon the statement.  Under those circumstances, the Court is persuaded, as a matter of law, that to the extent that Ms. Barhorst's statement was clear and unambiguous it indicated that Defendant intended to provide financing but that it would formally commit to doing so after receiving information from Kena Properties or Ms. Foster.  The statement did not clearly and unambiguously indicate that Defendant would provide such

10

financing regardless of Plaintiffs' ability to document the sufficiency of the collateral. The statement was either ambiguous and , thus, not a basis for a promissory estoppel claim or unambiguous in a manner that would not permit a showing of justifiable reliance by Plaintiffs.  Accordingly, the first element of the promissory estoppel claim is not satisfied.

The Court is equally persuaded that Plaintiffs cannot satisfy the third element.  The promise to provide financing was implicitly conditioned upon the receipt of, and Defendant's satisfaction with, information from Plaintiffs.  Not having received written confirmation after having provided that information, Plaintiffs' actions in reliance upon Ms. Barhorst's oral statement were not, as a matter of law, reasonable or foreseeable.  Accordingly, Defendant is entitled to summary judgment with respect to Plaintiffs' promissory estoppel claim.

D.  Conclusion

For the foregoing reasons, Defendant's motion for summary judgment (Doc. 18) is hereby **GRANTED** in its entirety.  This action is **CLOSED**.

**IT IS SO ORDERED**.

_____/s/_____
Sandra S. Beckwith, Chief Judge
United States District Court
